# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**FREDERICK BANKS**                                                        **PLAINTIFF**

**versus**                                             **CIVIL ACTION NO. 5:08cv336-KS-MTP**

**D. BUTLER, et al.**                                                 **DEFENDANTS**

## REPORT AND RECOMMENDATION

This matter is before the court on a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [56] filed by Defendants and *sua sponte* for evaluation under 28 U.S.C. § 1915A.[1] Having reviewed the motion, the entire record in this matter and the applicable law, and thus being fully advised in the premises, the undersigned recommends that the motion be granted, that Plaintiff's *Bivens* claims be dismissed without prejudice for failure to exhaust administrative remedies, and that Plaintiff's claims under the Privacy Act and the Federal Tort Claims Act be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff Frederick Banks is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi (FCC Yazoo City). On February 25, 2005, he was sentenced to serve a term of 60 months for convictions of mail fraud (three counts), copyright infringement, money laundering, uttering and possession of a counterfeit or forged security, and witness tampering by Judge Hardiman in the Western District of Pennsylvania. On March 10, 2006, Plaintiff was sentenced to an additional terms of 63 months for convictions of mail fraud (eight counts) by

---

[1] Pursuant to 28 U.S.C. § 1915A, Plaintiff's complaint is subject to dismissal if the court determines it "is frivolous, malicious, or fails to state a claim upon which relief may be granted." Section 1915A "applies to any suit by a prisoner against certain government officials or entities *regardless of whether that prisoner is or is not proceeding IFP*." *Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) (emphasis added); *see also Ruiz v. U.S.*, 160 F.3d 273, 274 (5th Cir. 1998).

Judge Conti in the Western District of Pennsylvania. Plaintiff is projected to be released from serving his sentences on May 23, 2013. *See* Exhs. 1, 2 & 3 to Motion for Summary Judgment.

In this action, filed by Plaintiff *pro se* on or about December 19, 2008, Plaintiff attempts to assert claims against the following Defendants: 1) Diana F. Butler, Accounting Technician at FCC Yazoo City; 2) Lisa S. Hunt, Accounting Technician at FCC Yazoo City; 3) Bruce Pearson, Warden at FCC Yazoo City; 4) Sandra Luton, Trust Fund Supervisor at FCC Yazoo City; 5) Julie L. Southerland, Unit Manager at FCC Yazoo City; 6) Phillip C. Jackson, Counselor at FCC Yazoo City; 7) Phillip Beatty, Jr., Correctional Systems Officer at FCC Yazoo City; 8) Sarita Johnson, Inmate Systems Manager at FCC Yazoo City; 9) the United States; 10) the Department of Justice (DOJ); 11) the Bureau of Prisons (BOP); 12) the Secretary of the Department of Interior; 13) the Bureau of Land Management (BLM);[2] 14) Keith Everett, Unit Manager at FCC Yazoo City; 15) Shirley Skipper-Scott, Deputy Case Management Coordinator at FCC Yazoo City; 16) Lisa Chisolm, Case Manager at FCC Yazoo City; and 17) Robert Brown, Assistant Trust Fund Supervisor at FCC Yazoo City.

Plaintiff makes a number of allegations in this lawsuit. First, Plaintiff alleges that from February 16, 2007 through November 5, 2008, Defendants Butler, Hunt, Pearson and Luton "froze, encumbered, and stole or otherwise distributed [his] funds out of his inmate trust fund account ... and otherwise converted the funds to their own use." *See* Cplt. [1] at ¶ 1. Plaintiff also alleges that around October or November of 2008, Defendants Butler, Hunt, Pearson and Luton were presented with a § 2241 petition and a green money form for his filing fee, but instead of processing them, they were returned to him. *See id.* at ¶ 2. Plaintiff also alleges that

---

[2] Defendants BLM and Department of Interior have made a limited appearance for the instant motion, as they contend that they have not been properly served with process.

on three occasions, Defendant Jackson, "along with his partner in crime Katon Varnado,"[3] obstructed, read and disseminated his personal and legal mail. *See* Supp. Cplt. [5] at ¶ 11. Plaintiff avers that Defendants Southerland, Beatty, Jackson and Johnson unlawfully opened, censored and interfered with his legal mail outside of his presence. *See id.* at ¶¶ 13-17. Plaintiff further contends that unspecified Defendants violated the Privacy Act by copying his private files which contained his "social security number, name and likeness and home address" and disseminating them among staff and inmates in conversations. *See id.* at ¶¶ 18-19. Plaintiff also asserts a separate invasion of privacy claim against the United States under the Federal Tort Claims Act (FTCA) based on these acts, arguing that they have placed him in a "false light." *See id.* at ¶ 27.

Next, Plaintiff raises a number of issues with respect to the conditions of his confinement. He claims that there are ventilation problems which have caused him to get sick; that for 1 ½ weeks in December 2008, the bathrooms in his unit were shut down; and that the housing units are "triple and double bunked and cramped." *See* Second Supp. Cplt. [6] at ¶¶ 1-2. Plaintiff asserts that his Unit Team has not considered him for placement in pre-release community confinement (in a Residential Reentry Center (RRC)) even though he has requested it, and that his Unit Managers do not show up for Unit Teams. *See id.* at ¶¶ 3-5. Finally, Plaintiff claims that he has been discriminated against on account of his race, which he alleges is Native American (Lakota Sioux). *See* Supp. Cplt. at ¶ 24. He also claims that the BLM wrongfully denied him an allotment of 160 acres as a Lakota Sioux. *See* Second Supp. Cplt. at ¶ 6.

---

[3] Katon Varnado is not a defendant in this action.

3

Defendants filed their Motion for Summary Judgment on July 1, 2010.[4] They contend that they are entitled to a dismissal of Plaintiff's claims because: 1) Plaintiff has failed to exhaust his administrative remedies; 2) Plaintiff has failed to establish a violation of his constitutional rights; 3) Defendants are entitled to qualified immunity; 4) Plaintiff fails to state a Privacy Act claim; 5) Plaintiff's FTCA claim fails; and 6) Plaintiff has failed to properly serve the BLM/Department of Interior.

SUMMARY JUDGMENT STANDARD

Summary judgment[5] shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164

---

[4] Defendants originally moved for summary judgment on June 22, 2009. *See* [23]. That motion was subsequently withdrawn without prejudice to defendants' right to re-file it once certain newly-added defendants had been properly served and had appeared before the court. *See* [37] [40].

[5] Because Defendants have submitted matters outside the pleadings with their motion, it should be characterized as a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

4

(5th Cir. 1995). If the defendant fails to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

<u>Unexhausted Claims</u>

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983 or "any other Federal law." Accordingly, federal prisoners filing suit under *Bivens*[6] "must first exhaust

---

[6] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the difference being that a *Bivens* action applies to alleged constitutional violations by federal actors, while a section 1983 action applies to alleged constitutional violations by state actors. *See Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

5

inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Russels*, 534 U.S. 516, 524 (2002); *see also Schipke v. Van Buren*, 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *see also Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. Jan. 14, 2008) (stating that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement) (citing *Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't.*, 2008 WL 116333, at *1 (5th Cir. Jan. 11, 2008) (stating that under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). "Indeed . . . a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process." *Woodford*, 548 U.S. at 85.

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke*, 239 Fed. Appx. at 86 (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10, *et seq.* The first step of the ARP process is the informal presentation of the issue to prison staff. If that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy. If the inmate is not satisfied with the warden's response to that request, he or she may

submit an appeal to the appropriate BOP regional director, and may then appeal that decision to the BOP's General Counsel. That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies. *See* 28 C.F.R. § 542.15(a).

Defendants argue that Plaintiff has failed to exhaust his administrative remedies on all of the issues raised in this case, as he has not timely and properly appealed beyond the regional level. The record reflects that Plaintiff has exhausted only three grievances since he has been incarcerated with the BOP: 1) # 443968-A2 (August 28, 2007), challenging the application of a Greater Security Management Variable (MGTV) that was being applied because Plaintiff supposedly had been collecting personal information on a warden at a previous facility, and requesting transfer to a minimum security camp facility;[7] 2) # 454450-A1 (September 4, 2007), requesting immediate placement in a Residential Reentry Center (RRC);[8] and 3) # 482128-A2 (July 3, 2008), appealing a Unit Disciplinary Committee (UDC) hearing held on March 31, 2008 in which Plaintiff was found to have committed the prohibited act of Being Absent From Assignment, Code 310. *See* Exhs. 40, 41 & 42 to Motion for Summary Judgment; *see also* [29-1 at 39-124] filed in 5:09-cv-147. Plaintiff has filed numerous other grievances, many of which he

---

[7] This grievance was the subject of a separate lawsuit filed in this court that was recently dismissed on September 17, 2010. *See Banks v. Federal Bureau of Prisons*, Civil Action No. 5:08-cv-147.

[8] This is the only exhausted grievance that is arguably related to any of the allegations at issue in this lawsuit. As noted *supra,* Plaintiff alleges that his Unit Team has not considered him for placement in an RRC even though he has requested it. *See* Second Supp. Cplt. [6] at ¶ 3. However, the court first notes that three of the four individuals against whom Plaintiff asserts this claim - Eden White, Christopher Curry and Larry Randle - are not defendants in this action. Plaintiff also asserts this claim against Defendant Jackson. However, as Plaintiff was not on Jackson's caseload until February 2008, when Plaintiff transferred into his unit and Jackson became his counselor (*see* Jackson Aff. ¶ 3), and this grievance was exhausted back in September 2007, it clearly could not relate to any of Jackson's alleged actions or inactions. The court further notes that this same claim regarding RRC placement was raised by Plaintiff in an action filed in this court on September 8, 2009 pursuant to 28 U.S.C. § 2241 (Civil Action No. 5:09-cv-148), and was dismissed with prejudice by Order [32] entered July 16, 2010.

has attempted to appeal through the Central Office level, but those appeals have all been rejected as untimely or for other various technical or procedural reasons. *See* Exh. 40 to Motion for Summary Judgment; *see also* [29-1 at 39-124] filed in 5:09-cv-147.

In an attempt to excuse his failure to exhaust, Plaintiff claims that throughout the relevant time period he requested a variety of grievance forms from Defendant Jackson, including informal Inmate Request to Staff forms ("BP-8"s) but Jackson did not provide him with the forms, telling him to "get out of my office." *See* Cplt. [1] at ¶ 3. Plaintiff provides further detail regarding his alleged attempts to exhaust his administrative remedies in his Supplemental Complaint, where he states that he made either verbal or written requests to Jackson for various grievance forms on the following dates: October 8, October 16, October 24, November 6, November 8, November 15 and November 20, 2008.[9] *See* Supp. Cplt. [5] at ¶¶ 7-8. Plaintiff avers that on those occasions Jackson either ignored his requests, brushed them off with a joke or change of subject, stated "I have nothing to do with that" and told him to "talk to the post office." Plaintiff claims that on one occasion Jackson told him that he could not provide the requested forms because "it was 'not his fault.'" *See id.* at ¶ 8.

According to Jackson, however, Petitioner requested an administrative remedy form from him on only one occasion - in June 2008 - when Petitioner sought to file a complaint about a UDC decision, and Jackson gave him an informal resolution form (a BP-8) on June 25, 2008.[10] Jackson avers that Petitioner did not ask him for administrative remedy forms on any other occasions, either before or after June 2008. Jackson further avers that on certain of the specific

---

[9] There is an additional date listed by Plaintiff as "10H2H08." *See* Supp. Cplt. [5] at ¶ 7. Presumably, Plaintiff is referring to 10/2/08.

[10] The record reflects that Plaintiff filed an administrative remedy on June 27, 2008 regarding a UDC hearing. *See* Exh. 40 to Motion for Summary Judgment.

8

dates Petitioner claims that he denied him administrative remedy forms - October 3, November 8 and November 15, 2008 - he was not at work. *See* Declaration of Phillip C. Jackson (Exh. 54 to Motion for Summary Judgment). Further, Julie Southerland, a Unit Manager at FCC Yazoo City and Jackson's Supervisor, avers that "it is well known among the inmate population that if an inmate has a complaint about a lower level member of the inmate's Unit Team, such as a Counselor, the inmate can complain to the Unit Manager to seek relief," and that Petitioner has not complained to her that Jackson refused to give him administrative remedy forms. *See* Declaration of Julie L. Southerland (Exh. 55 to Motion for Summary Judgment).[11] Nor does it appear from the record that Plaintiff ever filed a grievance regarding Jackson's alleged denial of grievance forms. *See*, *e.g.*, *Dye v. Bartow*, 2007 WL 3306771, at * 6 (E.D. Wis.Nov. 6, 2007), *aff'd*, 282 Fed. Appx. 434 (7th Cir. June 12, 2008) (stating that in order for prisoner's claim that prison officials denied him administrative remedy forms to defeat summary judgment on issue of exhaustion, prisoner must present "sufficiently specific facts" including, *inter alia*, evidence detailing the prisoner's complaints of denial) (citing *Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004)).

Further, this court is aware that Plaintiff is a prolific filer and has filed approximately 167 administrative grievances during his incarceration - both before and after he filed the complaint

---

[11] The court notes that this is not the first - nor even second - time Plaintiff has claimed that Defendant Jackson obstructed his access to the ARP. Plaintiff made similar claims in a petition filed under 28 U.S.C. § 2241 in this court, and the court found them to be without merit. *See Banks v. Pearson*, No. 5:09cv65-DCB-MTP, 2010 WL 2317108 (S.D. Miss. Feb. 26, 2010), *adopted by Banks v. Pearson*, No. 5:09-cv-65-KS-MTP, 2010 WL 2816626 (S.D. Miss. July 16, 2010). More recently, in an attempt to excuse his failure to exhaust administrative remedies, Plaintiff again made similar allegations against Jackson in a *Bivens* action filed in this court, and by Order entered September 17, 2010, the court rejected Plaintiff's allegations as "baseless" and "conclusory" and dismissed Plaintiff's unexhausted claims without prejudice for failure to exhaust. *See Banks v. Federal Bureau of Prisons*, No. 5:09-cv-147-KS-MTP.

9

in this action in December 2008.[12] *See* Exh. 40 to Motion to Dismiss [56-46]; *see also* [29-1 at 39-124] filed in 5:09-cv-147.  There are also several Inmate Request to Staff forms in the record from during the relevant time period - specifically, dated November 7, 2008 (Exh. 12A), October 19, 2008 (Exh. 12B), October 27, 2008 (Exh. 12C), November 1 and 3, 2008 (Exh. 18, 18A) regarding certain of the issues presented in this lawsuit. Moreover, of Plaintiff's approximately 167 administrative remedy filings, as discussed *supra* several have, in fact, been exhausted. Thus, Plaintiff is clearly familiar with the process to both commence and complete the grievance process and has utilized this process on numerous occasions.  Plaintiff's prolific administrative remedy filings belie his claim that he has been denied access.

> As stated by the United States Supreme Court:
>
>> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction....

*Woodford*, 126 S.Ct. at 2388.  Based on the foregoing, Plaintiff failed to exhaust his administrative remedies with respect to his *Bivens* claims, and has failed to demonstrate extraordinary circumstances as would warrant waiver of the exhaustion requirement.  *See Mayberry*, 74 Fed. Appx. at 299 (citing *Fuller*, 11 F.3d at 62).  Therefore, these claims should be dismissed without prejudice for failure to exhaust.

<u>Exhausted Claims</u>

The record reflects that Plaintiff has submitted an administrative claim for relief under the

---

[12] The most recent grievance of which the court is aware was filed by Plaintiff in May 2010.  *See* [29-1 at 39-124] filed in 5:09-cv-147.  In light of Plaintiff's extensive filing history, other grievances may have been filed since that time.

FTCA, dated May 11, 2008 where he contended that between February 16, 2008 and May 1, 2008, "unknown named mailroom prison and the unit team at FCC Yazoo City" opened, read, photocopied and disseminated over 400 pieces of his legal and personal mail. *See* MSJ Exh. 32. Plaintiff's claim was found to lack merit, as there was no information to substantiate it, and he was advised by letter dated November 20, 2008 that he had six months within which to file suit in federal court challenging the denial of his claim. *See* MSJ Exh. 33. Plaintiff filed suit here on December 19, 2008. Based on the foregoing, the court finds that Plaintiff has exhausted this claim[13] and, therefore, the court will address Plaintiff's Privacy Act and FTCA claims on their merits.

Plaintiff alleges that unidentified Defendants violated the Privacy Act, 5 U.S.C. § 552a, by copying his "private files" which contained his "social security number, name and likeness and home address" and disseminating them among staff and inmates in conversations.[14] *See* Supp. Cplt. [5] at ¶¶ 18-19. He claims that this was an "intentional intrusion upon [his] solitude and seclusion," and that Defendants' conduct was "intentional, willful, intelligent, intentional,

---

[13] "Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the [Federal] Tort Claims Act, and absent compliance with the statute's requirement, [a] district court [is] without jurisdiction." *McAffee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989) (*per curiam*). 28 U.S.C. § 2675(a) provides in pertinent part: "An action shall not be instituted upon a claim against the United States...unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."

[14] Specifically, Plaintiff contends: that unidentified staff members disclosed that he was an "Indian" and a "Yankee"; that "various" staff members including non-defendants Jerry Barber and Katon Varnado told Banks that they knew he was from Pennsylvania; that on one occasion Varnado told a staff member "be careful I know this guy"; that an inmate told him that Christopher Curry, a case manager and a non-defendant, told him "yeah Bank's that tall dude with the light eyes like to write people up"; that Tammy McCoy, the Unit Secretary and a non-defendant, "folded her arms" when he entered her office and "stopped saying hello" to him; and that Dr. Kathy Lawson, a non-defendant, told Plaintiff to "watch the call out for your appointment" but then never scheduled him an appointment. *See* [5] at ¶ 19.

11

purposeful, and malicious." *See id.* ¶¶ 19, 22. Plaintiff identifies the files that were allegedly copied and disseminated as "copies of financial and vital records such as a copy of [his] social security card, his driver's license and other important records that he forwarded to counsel," as well as personal information contained in his incoming mail." *See* [28] at 5. Plaintiff also asserts a separate invasion of privacy claim against the United States under the FTCA based on these facts, arguing that they have placed him in a "false light." *See* Supp. Cplt. at ¶ 27.

5 U.S.C. §§ 552a(b) provides, with certain exceptions, that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." In order to survive summary judgment on his Privacy Act claim, Plaintiff must demonstrate: 1) the information disclosed is a "record" in a "system of records";[15] 2) the agency disclosed the information; 3) the disclosure had an adverse effect on him; and 4) the disclosure was willful. *See Jacobs v. Nat't Intelligence Drug Ctr.*, 423 F.3d 512, 515-16 (5th Cir. 2005). Plaintiff has failed to make this showing.

As clarified by Plaintiff, the information that he claims was disclosed was contained in his own documents that he forwarded to counsel, as well as in certain incoming mail that he received. *See* [28] at 5. Since the information was not contained in a "system of records" under the control of the BOP (or any other federal agency), Plaintiff's Privacy Act claim fails. Moreover, even if Plaintiff could establish that the information was contained in a "system of

---

[15] "Record" is defined as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or photograph." 5 U.S.C. § 552a(b). "Systems of records" is defined as "a group of records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

records,"[16] the substance of the alleged disclosures themselves defeats his claim. The fact that Plaintiff is from Pennsylvania[17] and is an "Indian" are contained in the public record,[18] and the disclosure of public information does not violate the Privacy Act. *See*, *e.g.*, *Ash v. U.S.*, 608 F.2d 178, 179 (5th Cir. 1979). A statement by a staff member to another to "be careful, I know this guy" or a statement by an staff member to an inmate that Plaintiff likes to "write people up" are - at most - innocuous statements of opinion, rather than disclosures of records and create no real adverse effect. Therefore, they do not violate the Privacy Act. *See FDIC v. Dye*, 642 F.2d 833, 836 n.5 (5th Cir. 1981) (citation omitted). The other instances provided by Plaintiff do not involve any disclosures at all. Accordingly, Plaintiff's Privacy Act claims should be dismissed.

Plaintiff also asserts a separate claim under the FTCA, based on these same facts. The FTCA creates "a limited waiver of sovereign immunity making the United States liable to the same extent as private parties for certain torts of federal employees acting within the scope of their employment." *Montoya-Ortiz v. Brown*, 154 Fed. Appx. 437, 439-40 (5th Cir. Nov. 22, 2005) (citing *U.S. v. Orleans*, 425 U.S. 807, 813 (1976); 28 U.S.C. § 1346(b)). With respect to Plaintiff's allegations that BOP staff intentionally invaded his privacy by opening and reading his personal mail and disseminating his personal information, the FTCA does not waive the United States' sovereign immunity for suits alleging intentional torts committed outside the scope of

---

[16] In response to Defendants' motion, Plaintiff contends that the records at issue "are part of FOIA/Privacy Act records [he] received from the government agencies including the BOP, U.S. Marshal, U.S. Attorney and U.S. Postal Service/Postal Inspectors." *See* [28] at 7.

[17] Presumably the basis for the alleged referral to Plaintiff as a "Yankee," which, even if true, leads nowhere. Such a reference is simply not actionable, raises no privacy concerns, and is clearly frivolous.

[18] Plaintiff's court of conviction - the Western District of Pennsylvania - is listed on his Public Info. Inmate Data sheet. *See* MSJ Exh. 1. Moreover, Plaintiff routinely avers that he is a Native American in his many court filings, both in this case and others (*see*, e.g., [5] at ¶ 3), and on the BOP website his race is listed as "Indian." *See* http://www.bop.gov/iloc2/LocateInmate.jsp (last accessed Sept. 22, 2010).

employment.[19] *See Lelux v. U.S.*, 178 F.3d 750, 757 (5th Cir. 1999) ("[A]ny tortious conduct committed *outside the scope of employment* is barred by the FTCA. Only negligent conduct, undertaken within the scope of employment and unrelated to an excluded tort under § 2680(h),[20] may form the basis of a cause of action.") (emphasis in original).

Further, to the extent that Plaintiff asserts a cause of action under the FTCA for intentional infliction of emotional distress (*see*, *e.g.*, [28] at 5), such a claim is barred. 28 U.S.C. § 1346(b) provides that "[n]o person convicted of a felony who is incarcerated...while serving a sentence may bring a civil action against the United States or an agency, officer, or employee of the Government, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Plaintiff has made no such showing.

Accordingly, for the foregoing reasons, Plaintiff's claims under the FTCA should be dismissed.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of the undersigned that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [56] be granted, that Plaintiff's *Bivens* claims be dismissed without prejudice for failure to exhaust administrative remedies, and that Plaintiff's claims under the FTCA and the Privacy Act be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days

---

[19]Plaintiff concedes that "invasion of privacy is an intentional tort." *See* [28] at 5.

[20] These excluded torts are: assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights. *See* 28 U.S.C. § 2680(h).

after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

    THIS, the 23rd day of September, 2010.

                                     s/ Michael T. Parker
                                     United States Magistrate Judge